UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BERNARD JONES,

                Petitioner,

                                  CASE NO. 1:10-CV-11783
      v.                              JUDGE THOMAS L. LUDINGTON
                                  MAGISTRATE JUDGE PAUL J. KOMIVES

DAVID BERGH,

                Respondent.

_____/


**<u>REPORT AND RECOMMENDATION</u>**

I.     <u>RECOMMENDATION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.    <u>REPORT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     C.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     D.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     E.     *Limitation on Cross Examination (Claims I & VI)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          1.     *Background Relating to the Immunity Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . 11
          2.     *Confrontation* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
          3.     *Suppression* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
     F.     *Prosecutorial Misconduct (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
     G.     *Jury Instructions (Claim IV)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
          2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
     H.     *Weight/Sufficiency of the Evidence (Claims VII)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          1.     *Weight of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
          2.     *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
     I.     *Ineffective Assistance (Claims III & V)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
          2.     *Trial Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
               a. Immunity Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
               b. Motion to Quash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
               c. Cross-Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
               d. Eyewitness Expert . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
               e. Jury Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
               f. Prosecutorial Misconduct . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        3.     *Appellate Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

J.    *Recommendation Regarding Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

     1.     *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

     2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

K.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

III.     NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*     *     *     *     *

I.     <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.     <u>REPORT</u>:

A.     *Procedural History*

    1.     Petitioner Bernard Jones is a state prisoner, currently confined at the Thumb Correctional Facility in Lapeer, Michigan.

    2.     On November 15, 2005, petitioner was convicted of assault with intent to commit murder, MICH. COMP. LAWS § 750.83; possession of a firearm by a convicted felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court.  On December 6, 2005, he was sentenced to a term of 20-40 years' imprisonment on the assault conviction, 2-5 years' imprisonment on the felon in possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

    3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.     DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE DEFENSE REQUEST TO INQUIRE INTO A WITNESS' UNDERSTANDING OF AN IMMUNITY AGREEMENT, THUS DENYING DEFENDANT HIS RIGHT TO DUE PROCESS.

    II.     DEFENDANT-APPELLANT IS ENTITLED TO A NEW TRIAL WHERE

2

THE CLOSING ARGUMENTS OF THE PROSECUTOR DENIED HIM A FAIR TRIAL.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

*See People v. Jones*, No. 267111, 2007 WL 1264001 (Mich. Ct. App. May 1, 2007) (per curiam).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court denied petitioner's application for leave to appeal in a standard order.  *See People v.*

*Jones*, 480 Mich. 953, 741 N.W.2d 328 (2007).

5.      Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant

to MICH. CT. R. 6.500-.508, raising the following claims:

I.      MR. JONES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.  ALSO BY THE WAY OF APPELLATE COUNSEL'S INEFFECTIVENESS "CAUSE" WOULD BE DEMONSTRATED FOR REVIEW.

II.     MR. JONES' RIGHT TO A PROPERLY INSTRUCTED JURY [HAS] BEEN INFRINGED UPON, BY THE LACK OF PROPER INSTRUCTIONS THAT SHOULD HAVE BEEN READ, FOR THE FACT THERE WAS CLEAR EVIDENCE PRESENTED AT TRIAL TO SUPPORT THE INSTRUCTIONS RAISED WITHIN THIS ISSUE.  THE JUDGE HAD DISCRETION TO READ A PROPER INSTRUCTION EVEN WITHOUT THE REQUEST OF A MOVING PARTY. U.S. CONSTITUTIONAL AMENDMENT XIV.  IN ALTERNATE: COUNSEL WAS CLEARLY INEFFECTIVE FOR THE FAILURE TO REQUEST THE INCLUDED JURY INSTRUCTIONS TO BE READ TO THE JURY.  JURY INSTRUCTIONS ARE CONSIDERED A CRITICAL STAGE OF TRIAL, THEREFORE A REVIEW FOR STRUCTURAL ERROR IS WARRANTED.  U.S. CONSTITUTIONAL AMENDMENT IV.

III.    MR. JONES WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WITHIN THE MEANING OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.  COUNSEL FAILED TO REQUEST JURY INSTRUCTION, MOVE FOR EYEWITNESS EXPERT TESTIMONY, FILE PROPER MOTION, AND FINALLY PLACE PROPER OBJECTION ON THE RECORD.

IV.     MR. JONES' RIGHT TO A FAIR TRIAL WAS INFRINGED UPON BY

3

THE TRIAL JUDGE RULING, NOT ALLOWING THE PROPER IMPEACHMENT OF CHRISTOPHER JAMES ALFORD OF (PAROLE) WAS PRIOR CONVICTIONS AND THE WITNESSES UNDERSTANDING OF HIS IMMUNITY AGREEMENT, ALSO PROSECUTION WOULD BE SUBJECTED TO A <u>BRADY</u> VIOLATION IN WHERE THE IMMUNITY AGREEMENT WAS NEVER DISCLOSED FOR PROPER IMPEACHMENT MATERIAL. VIOLATIONS TO DEFENDANTS V AND XIV AMEND OF THE U.S. CONST.

V.  MR. JONES CONVICTION WAS A PRODUCT OF A VERDICT AGAINST THE GREAT WEIGHT OF EVIDENCE. THIS ISSUE COULD ALSO BE SUBJECTED TO A SUFFICIENT EVIDENCE TEST. U.S. CONST AM XIV.

On August 4, 2008, the trial court denied petitioner's motion for relief from judgment, concluding that petitioner's claims were barred either under MICH. CT. R. 6.508(D)(2) because they had already been raised and decided on direct appeal, or under MICH. CT. R. 6.508(D)(3) because petitioner failed to raise them on direct appeal. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jones*, 485 Mich. 1079, 777 N.W.2d 165 (2010); *People v. Jones*, No. 289874 (Mich. Ct. App. July 16, 2009).

6.  Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 3, 2010. As grounds for the writ of habeas corpus, he raises the following claims:

I.  PETITIONER JONES IS ENTITLED TO A NEW TRIAL WHERE THE MICHIGAN STATE COURTS DENIED THE DEFENSE REQUEST TO INQUIRE INTO A WITNESS' UNDERSTANDING OF AN IMMUNITY AGREEMENT, THUS DENYING PETITIONER HIS RIGHT TO DUE PROCESS.

II.  PETITIONER JONES IS ENTITLED TO A NEW TRIAL WHERE THE CLOSING ARGUMENTS OF THE PROSECUTOR DENIED HIM A FAIR TRIAL.

III.  PETITIONER JONES WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION. ALSO BY THE WAY OF

4

APPELLATE COUNSELS INEFFECTIVENESS "CAUSE" WOULD BE DEMONSTRATED FOR REVIEW.

IV.    PETITIONER JONES' RIGHT TO A PROPERLY INSTRUCTED JURY WAS BEEN INFRINGED UPON, BY THE LACK OF PROPER INSTRUCTIONS THAT SHOULD HAVE BEEN READ, FOR THE FACT THERE WAS CLEAR EVIDENCE PRESENTED AT TRIAL TO SUPPORT THE INSTRUCTIONS RAISED WITHIN THIS ISSUE. THE JUDGE HAD DISCRETION TO READ A PROPER INSTRUCTION EVEN WITHOUT THE REQUEST OF A MOVING PARTY. UNITED STATES CONSTITUTIONAL AMENDMENT FOURTEENTH. IN ALTERNATIVE, COUNSEL WAS CLEARLY INEFFECTIVE FOR THE FAILURE TO REQUEST THE INCLUDED JURY INSTRUCTIONS TO BE READ TO THE JURY. JURY INSTRUCTIONS ARE CONSIDERED A CRITICAL STAGE OF TRIAL. THEREFORE, A REVIEW FOR STRUCTURAL ERROR IS WARRANTED. UNITED STATES CONSTITUTIONAL AMENDMENT SIXTH.

V.     PETITIONER JONES WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WITHIN THE MEANING OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION. COUNSEL FAILED TO REQUEST JURY INSTRUCTION, MOVE FOR EYEWITNESS EXPERT TESTIMONY, FILE PROPER MOTIONS, AND FINALLY PLACE PROPER OBJECTIONS ON THE RECORD.

VI.    PETITIONER JONES' RIGHT TO A FAIR TRIAL WAS INFRINGED UPON BY THE TRIAL JUDGE RULING, NOT ALLOWING THE PROPER IMPEACHMENT OF CHRISTOPHER JAMES ALFORD OF (PAROLE) WAS PRIOR CONVICTIONS AND THE WITNESS UNDERSTANDING OF HIS IMMUNITY AGREEMENT, ALSO PROSECUTION WOULD BE SUBJECTED TO A BRADY VIOLATION IN WHERE THE IMMUNITY AGREEMENT WAS NEVER DISCLOSED FOR PROPER IMPEACHMENT MATERIAL. VIOLATIONS TO DEFENDANT FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

VII.   PETITIONER JONES' CONVICTION WAS A PRODUCT OF A VERDICT AGAINST THE GREAT WEIGHT OF THE EVIDENCE. THIS ISSUE COULD ALSO BE SUBJECTED TO A SUFFICIEN[CY] OF EVIDENCE TEST. UNITED STATES CONSTITUTION FOURTEENTH [AMENDMENT].

7.    Respondent filed his answer on November 5, 2010. He contends that petitioner's

fourth through seventh claims are barred by petitioner's procedural default in the state courts, and that

petitioner's remaining claims are without merit.

8.      Petitioner filed a reply to respondent's answer on March 28, 2011. Petitioner also filed

an additional exhibit, consisting of parole board documents of witness Christopher Alford.[1]

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner's convictions arose from the December 28, 2004, shooting at a home in Detroit that

resulted in the deaths of Charles Caldwell and Roger Snyder and the wounding of Christopher Alford

and Dawn Harriett. The evidence adduced at trial was accurately summarized in petitioner's brief on

direct appeal:

> The following witnesses testified: Dawn Harriett, Barbara Harris, Detroit
> Police Officer Michael Hostos, Doctor John Somerset, Christopher Alford, Detroit
> Police Officer David Pauch, Detroit Police Officer Errol King, and Detroit Police
> Sergeant Ernest Wilson.
>       . . . .
> Ms. Harriett was present at the location, Mr. Roger Snyder's house, along with
> Charles Caldwell, Christopher Alford, Brian Alford, Barbara Harris, and someone else
> whom she did not know. She was there using cocaine. A person she knew as "Al"
> and defendant came over. When she walked out of the bedroom, she saw both of them
> talking to Charles, whom she saw sitting at a table cutting up some drugs. She thought
> they were arguing over drugs. She went back into the bedroom and heard gunfire.
> She saw Al shoot Mr. Snyder, who was in the bedroom with her and then shoot her.
> She did not see what happened to Christopher that evening, except to earlier seeing
> him sleeping on the couch in the living room. She never saw defendant with a
> weapon, nor did she know what happened to defendant after she went back into the
> bedroom. She was aware someone taking drugs out of the house after the shooting.
> She was also aware there were probably weapons in the drug house. She thought she
> heard different guns, but did not know who had the other weapon, nor did she
> Christopher Alford get shot.
> Ms. Harris shared the house with Mr. Snyder. Several others were there. Al
> and defendant, whom she had known as a supplier of narcotics, came over and she let
> them in. They got into an argument with Charles who was seated at a table in the
> living room. Defendant told her to go into the back room. She admitted using

---

[1]Although petitioner's brief in support of his petition lists all seven grounds for relief, the body
of the brief substantively discusses only the first three claims. Likewise, petitioner's reply does not
expressly address the substance of these claims. In analyzing petitioner's last four claims, therefore, I
rely on the arguments made with respect to those claims in the state courts.

narcotics that evening. She was looking into the living room when she saw defendant pull out a gun and shoot Mr. Caldwell three times. She knew Mr. Caldwell had a weapon for protection. She did not see Al with a weapon. She hid in a bathroom closet. She did not see who shot Mr. Snyder, but claimed defendant shot Ms. Harriett, but was not sure. She did not see Mr. Alford get shot. After they left, she came out, saw Mr. Alford had been shot, and tried calling 911. Mr. Alford told her to clean up the drugs from the table and get rid of them. She did so by putting them down her pants. They went outside, were able to flag down a border patrol officer who was driving by. She was later interviewed by the police, but did not tell them about the narcotics because she did not want to get anyone into trouble. She did however, tell Sgt. Wilson, because she knew she was going to be patted down. She admitted she was given immunity concerning any narcotics charges. She did not see the two leave, testified differently at the preliminary examination, and admitted she had been previously convicted of several offenses.

As Off. Hostos was responding to the location, he met the border patrol agent, who had Mr. Alford as well as a female, Ms. Harris. At the location, he found one male lying on the living room floor, dead, and two others, male and female, in a rear bedroom. The male appeared dead but Ms. Harriett was alive. He was present when EMS arrived. He found residual narcotics, but no weapons in the house. He briefly interviewed Ms. Harris before he turned her over to his sergeant. There were other officers at the scene.

Dr. Somerset, forensic pathologist, determined the cause of death as to Mr. Caldwell was four gunshot wounds with evidence of close range firing. A bullet was recovered. As to Mr. Snyder, the cause of death was two gunshot wounds to the head, also with evidence of close range firing. A bullet was also recovered and turned over to the police.

Mr. Alford was present at the location, sleeping on a couch in the living room. He had known Mr. Caldwell since they were children. He did not see Ms. Harris there, that Ms. Harriett was there that day. He knew someone by the name of Al, knew defendant since they were children. He never had any problems with either of them. He awoke when he was shot in the face. He saw Al standing over Mr. Caldwell. When Al pointed the gun at him, he started wrestling with him. He did not see defendant. He did not know who was shooting him in the neck. As he was wrestling with Al he got shot a couple more times, then saw defendant come out from the back and shoot him in the back. He fell on the ground and played dead. He heard several more shots. He believed defendant shot him a total of four times out of the eight or nine that struck him. He heard defendant tell Al to give him some more. He believed that the weapons were handguns. He did not see anyone else in the house. He believed the two left together. Approximately 30 seconds later, he checked on Mr. Caldwell, who he believed was dead. Ms. Harris came out from the back room. Even though he had been shot in the face, he told Ms. Harris to clean up the narcotics from the table in the living room. He did not see any weapons in the house. He went into the back bedroom, saw the two people lying on the bed and left the house. He was able to flag down the border patrol officer. He was taken to the hospital, where he stayed for a week. He admitted it was a drug house, but he did not use any narcotics

7

that day. He admitted he had sold drugs from the house, but denied there were any guns in the house or that he saw Mr. Caldwell with a weapon.

He believed he had an immunity agreement with the prosecution in return for his testimony, that he would not have any charges brought against him involving narcotics. The only time he saw the narcotics was after he was shot. He did not see anyone arrive at the house. He was interviewed by the police. He testified at the preliminary examination differently than his current testimony. He admitted there was another person in the house, whom he thought was selling drugs, but did not see him when he woke up.

Outside the presence of the jury, it was established that Ms. Harris was given immunity and Mr. Alford was also offered immunity regarding any drugs found at the location. The court denied a defense request to explore the witness' full understanding of the immunity agreement or to make a separate record. Mr. Alford admitted to a prior drug conviction and felony firearm conviction, for which he was on parole.

Off. Pauch, expert in firearms and tool marks identification, examined shell casings and bullets recovered, determined there were possibly six weapons involved. The bullets recovered from the victims came from the same weapon.

Off. King, evidence technician, identified various photographs of the location, which included locations of various items of evidence.

It was stipulated defendant had previously been convicted of a felony and was ineligible to possess a weapon.

Sgt. Wilson, officer-in-charge, had taken a statement from defendant on April 9, 2005, after advising him of his Miranda rights. The statement was read to the jury.

Outside the presence of the jury, defendant confirmed he would not be testifying. Defendant rested.

Def.-Appellant's Br. on App., in *People v. Jones*, No. 267111 (Mich. Ct. App.), at 2-6 (citations to trial transcript and footnotes omitted).

C.    *Procedural Default*

Respondent first contends that petitioner's fourth through seventh claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits. Petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his appellate counsel was ineffective for failing to raise these claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to

excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676 (S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

D.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

9

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.    *Limitation on Cross Examination (Claims I & VI)*

Petitioner first contends that he was denied his right to confront Alford because the trial court limited his questioning of Alford regarding an immunity agreement.  He also contends that the prosecutor suppressed the immunity agreement.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.    *Background Relating to the Immunity Claims*

At the preliminary examination, the prosecutor indicated that "the People have offered Mr. Christopher Allford [sic] immunity regarding any drugs that were found at this location and we are offering use immunity regarding his testimony here today."  Prelim. Exam. Tr., at 5.  At trial, defense counsel sought to cross-examine Alford regarding his understanding of the immunity agreement.  The prosecutor objected, indicating that there was no immunity agreement.  *See* Trial Tr., dated 11/10/05, at 112-13.  The jury was excused, and defense counsel referred the court to the preliminary examination transcript.  After reviewing the transcript, the prosecutor indicated that she was mistaken, but it was still not clear the full scope of the immunity granted to Alford.  The prosecutor indicated that immunity at most would be limited to the drugs that were in the house.  *See id*. at 113-18.

11

Counsel indicated that he wished to question Alford to determine his understanding of the agreement. The Court indicated that counsel would be permitted to make this inquiry. *See id*. at 120. Counsel requested permission to also inquire about Alford's understanding of the immunity agreement with respect to any parole violation he may have committed. The trial court denied counsel's request, concluding that it would be "a backdoor way of getting in evidence of prior convictions." *Id*. at 126; *see id*. at 125-28. The jury was brought back into the courtroom, and counsel continued his cross-examination of Alford, resulting in the following exchange:

> Q   Sir, could you tell us your understanding, please, in regard to anything you say during the course of this proceeding in terms of immunity? What's your understanding? What's your belief?
>
> A   My understanding of immunity?
>
> Q   Yes, your understanding of your immunity?
>
> A   I really – I understand it, but I really don't understand it, but I just know that – what I was given immunity for was for examination for the drugs, you know what I'm saying. I don't really know how it works or I was just told, you know what I'm saying. That paperwork don't tell me nothing.
>
> Q   I see. So you were told that no one was going to prosecute you?
>
> A   I couldn't hear you.
>
> Q   When you say you were told, what were you told?
>
> A   I was offered use immunity.
>
> Q   And when you were offered that what did you understand that to be?
>
> A   That I couldn't have no charge brought against me against the dope.

*Id*. at 129.

> 2.   *Confrontation*

Petitioner contends that he was denied his right to confront Alford when the trial court limited

his cross-examination regarding the immunity agreement, not allowing counsel to explore the implications of the agreement on any parole violation Alford may have committed. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### a. Clearly Established Law

The Supreme Court's "Confrontation Clause cases fall into two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) (per curiam). The latter category, which is implicated here, recognizes that "[c]onfrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Thus, in cases where the trial court has restricted cross-examination in some manner, "the Court has recognized that Confrontation Clause questions will arise because such restrictions may 'effectively . . . emasculate the right of cross-examination itself.'" *Fensterer*, 474 U.S. at 19 (quoting *Smith v. Illinois*, 390 U.S. 129, 131 (1968)).

However, the Supreme Court has also explained that the Confrontation Clause does not "guarantee cross-examination that is effective in whatever way and to whatever extent the defense might wish." *Fensterer*, 474 U.S. at 20. The question is whether the trial court's ruling allowed for "substantial compliance with the purposes behind the confrontation requirement," or, put another way, whether petitioner was "significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. Thus, "[s]o long as cross-examination elicits adequate information to allow a jury to assess a witness's credibility, motives, or possible bias, the Sixth Amendment is not compromised by a limitation on cross-examination." *United States v. Cueto*, 151 F.3d 620, 638 (7th Cir. 1998); *see also*, *United States v. Larranaga*, 787 F.2d 489, 498 (10th Cir. 1986). Further, even if a restriction on cross-examination amounts to a violation of the confrontation

13

right, such an error may be harmless.  *See  Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

*b.  Analysis*

The Michigan Court of Appeals rejected petitioner's claim, concluding that even assuming an error had occurred, the error was harmless.  The court reasoned:

> Here, the witness told the jury that he had an immunity agreement and that it covered illegal drug activity at the scene; the added fact, assuming it to be true, was that it extended to parole violations and not just standard criminal charges.  This is a de minimis, and in the context of this case, inconsequential exclusion of testimony.  After hearing the testimony, reasonable jurors surely concluded that the witness was not going to be prosecuted for anything related to the drug activity.  In sum, the jury heard evidence bearing on the witness's credibility and bias in the form of the immunity testimony, and the disputed evidence concerning parole violations would have added little if anything to the inquiry.

*Jones*, 2007 WL 1264001, at *1.  This determination was reasonable.

As the court of appeals explained, the plain import of Alford's testimony was that he understood the immunity agreement to provide him complete immunity from any criminal charges arising from his possession of drugs at the scene of the shooting.  The jury would not have inferred that petitioner could still be charged with a parole violation, particularly in light of the fact that it was never brought to the jury's attention that Alford was on parole.  Additional testimony specifically stating the witness's understanding that it extended to a parole violation would have added nothing, as that was already the import of his statement.  And testimony that it did not extend to a parole violation would have harmed petitioner's case, because his potential liability on a parole violation would have lessened his motivation to testify favorably for the prosecution.  In light of the fact that Alford testified that he understood the agreement to provide him immunity from any criminal charges arising from the drug activity at the scene of the shootings, petitioner cannot show that the trial court's ruling "significantly limited [him] in any way in the scope or nature of his cross-examination."  *Green*, 399 U.S. at 166.  Accordingly, the Court should conclude that petitioner is not entitled to

habeas relief on this claim.

      3.      *Suppression*

      Petitioner also contends that the prosecution violated his right to a fair trial by suppressing the immunity agreement. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      *a.  Clearly Established Law*

      The Due Process Clause requires the state to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). In *Napue v. Illinois*, 360 U.S. 264, 268-69 (1959) and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), the Supreme Court held that a defendant's right to a fair trial under the Fourteenth Amendment may be violated where the prosecution deliberately misleads a jury, or allows misleading testimony to go uncorrected, with respect to any promises offered a key prosecution witness in exchange for his testimony. A *Napue/Giglio* violation is a subset of a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), in which the Court held that "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87. "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Thus, in order to establish a *Brady* claim, petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *Luton v. Grandison*, 44 F.3d 626, 628-29 (8th Cir.

1994); *see also*, *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601. Further, although *Brady* requires disclosure of exculpatory evidence, it is well established, that "*Brady* . . . does not require the government to create exculpatory material that does not exist." *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980); *see also*, *Richards v. Solem*, 693 F.2d 760,766 (8th Cir. 1982) ("Although the state has a duty to disclose evidence, it does not have a duty to create evidence.").

### b. Analysis

Petitioner cannot show a *Brady* violation from the failure to disclose the immunity agreement in general, because that agreement was disclosed. At the preliminary examination, the prosecutor indicated that she had granted use immunity to Alford. Although the prosecutor initially indicated at trial that no such immunity had been granted, she corrected herself and agreed that use immunity with respect to any criminal charges had, in fact, been given, and petitioner was permitted to examine Alford regarding this immunity, eliciting from Alford his understanding that the agreement prevented the prosecutor from filing any criminal charges based on drug activity at the house in which the shootings occurred. Even if defense counsel first learned of this agreement at trial, there would be no failure to disclose. Because the purpose of *Brady* is to permit a defendant to put all exculpatory information before the jury, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (internal quotation omitted). Even where "previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates *Brady* only where the delay causes

16

prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

Petitioner nevertheless argues that the prosecution failed to disclose that this immunity also extended to any parole violation arising from Alford's presence in the house where drugs were being sold. This argument fails, for two reasons. First, petitioner has failed to show that any such immunity deal existed. In support of his claim, petitioner has presented Alford's parole records. All those records show, however, is that the Michigan Parole Board did not issue a violation based on Alford's alleged drug use. They do not establish why the Board did not do so. The Board did issue a violation based on Alford's failure to report and his presence at the scene of the shooting, and extended the term of his parole as a result. Perhaps the Board determined, as apparently the prosecutor had, that Alford "[a]ctually . . . didn't commit a crime as to the drugs," because they were in someone else's possession. Trial Tr., dated 11/10/05, at 118. Nothing in the records supports petitioner's claim that a parole violation was not lodged as a result of a deal with the prosecutor. Indeed, it is doubtful that the prosecutor could have made such a deal, as Michigan law grants almost unfettered discretion to the Parole Board with respect to parole violations and revocations. *See Ex parte Casella*, 313 Mich. 393, 401, 21 N.W.2d 175, 178 (1946); MICH. COMP. LAWS § 791.240a. Because petitioner cannot show that Alford was in fact granted immunity with respect to any parole violation, he cannot establish a *Giglio* violation. *See Abdur-Rasheed v. Jones*, 100 Fed. Appx. 357, 359 (6th Cir. 2004); *United States v. Elkins*, 885 F.2d 775, 788 (11th Cir. 1989); *Leonard v. Warren*, No. 03-CV-71430, 2005 WL 1349115, at *4 (E.D. Mich. Jan. 31, 2005) (Komives, M.J.), *report adopted*, 2005 WL 2072108 (E.D. Mich. Aug. 25, 2005) (Roberts, J.)

Further, petitioner is not entitled to relief because he cannot show that the alleged additional deal with Alford was material. Under *Brady*, "[e]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would

have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987); *accord Strickler*, 527 U.S. at 280; *United States v. Bagley*, 473 U.S. 667, 682 (1985) (Blackmun, J.).  As explained above, the jury would have understood Alford's testimony as indicating his belief that he was immune from any criminal charges.  Further, Alford was questioned about this immunity agreement and his drug use, and extensively impeached in a number of respects.  In light of this significant impeachment evidence and the fact that the jury would naturally have understood that Alford faced no criminal liability in exchange for his testimony, it is not reasonably probable that the existence of an actual deal with respect to parole violations, if one in fact existed, would have altered the jury's assessment of Alford's credibility.  *See United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.");  *McKleskey v. Kemp*, 753 F.2d 877, 884-85 (11th Cir. 1985) (en banc) (no reasonable likelihood that undisclosed statement of government agent promising leniency would have affected the jury's assessment of witness's credibility where witness admitted to a number of previous convictions and admitted that he was testifying to protect himself from a codefendant), *aff'd on other grounds*, 481 U.S. 279 (1987); *Williams v. Calderon*, 48 F. Supp. 2d 979, 1003 (C.D. Cal. 1998); *Moore v. Zant*, 682 F. Supp. 549, 551 (M.D. Ga. 1988).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Prosecutorial Misconduct (Claim II)*

Petitioner next claims that the prosecutor committed misconduct that denied him a fair trial. Specifically, petitioner contends that the prosecutor vouched for the credibility of the witnesses and

misstated the evidence during closing and rebuttal argument.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

      1.     *Clearly Established Law*

     For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

     Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury." *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2]

---

     [2]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

2.    *Analysis*

Petitioner points to a number of statements made by the prosecutor during closing or rebuttal argument which he contends constituted misconduct:

- Discussing petitioner's statement, the prosecutor noted that petitioner first said that he saw Al shoot Caldwell once and then ran from the house, "[b]ut later in his statement, because I don't thing it's the truth, the evidence has kind of show the truth. He says, I saw Al shoot Christopher, C Note, on the couch. And then I heard more shooting from the back." Trial Tr., dated 11/14/05, at 51.

- Discussing petitioner's version of events versus the testimony of the witnesses and the number of shots fired, the prosecutor stated: "Common sense and reasonableness. The defendant is shooting. We've got witnesses who have not motive to lie. What are they here to lie for? They said the defendant is shooting." *Id*. at 53.

- Discussing the credibility of Alford, the prosecutor stated: "Mr. Alford is a victim, too. He's here because this case is important to him as well. He was shot seven times. He came in and testified about what he saw. He didn't come in here and – If all these people had some motive to lie, what is it? What is it?" *Id*. at 54.

- Similarly, during rebuttal, the prosecutor stated: "None of these people have a motive to lie. None. The fact that they were given immunity for taking the drugs off the, the possession of the drugs off the table, so what? Take that part of the testimony that they took the drugs. That just shows you who they are, that they go down to the point where those drugs are the ultimate thing. That's why they're in the drug house." *Id*. at 80.

- Referring to petitioner's statement and asking "[w]hat part's the truth?," the prosecutor continued: "The truth is that he's in there with Al and they're both shooting. And I believe that they even use, on or the other, Mr. Caldwell's gun, in that shooting, that there were three guns." *Id*. at 81.

The Michigan Court of Appeals rejected petitioner's claim, reasoning that with each statement the prosecutor was not expressing a personal belief, but was basing her arguments on the evidence. *See Jones*, 2007 WL 1264001, at *2-*3. The court also reasoned that the trial court could have cured any possible prejudice by giving a cautionary instruction, but that petitioner expressly declined the

20

opportunity. *See id.* at *3; Trial Tr., dated 11/14/05, at 110-11 (counsel stating that "[a]s a matter of trial tactics, I have decided not to seek any curative instruction," because after considering the matter he "decided that it would be best not to highlight that with the curative instruction."). The court of appeals's determination was reasonable.

The first four statements identified by petitioner are disposed of easily. In none of those statements did the prosecutor express a personal belief in a witness's veracity or suggest that facts not in evidence supported the witness's veracity. Rather, as is clear from the context of the statements, in each instance the prosecutor was arguing that the evidence failed to show that the prosecution witnesses had a motive to lie, and that the evidence showed that petitioner had in fact given inconsistent versions in his statement to the police. "[W]here a prosecutor argues that a witness is being truthful based on the testimony given at trial, and does not assure the jury that the credibility of the witness is based on his own personal knowledge, the prosecutor is engaging in proper argument and is not vouching." *United States v. Walker*, 155 F.3d 180, 187 (3d Cir. 1998). Further, the prosecutor was free to comment that the jury should use its common sense in evaluating the credibility of the witnesses. *See Walker*, 155 F.3d at 187; *see also*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").

The final argument identified by petitioner is closer to the line of impermissible statement,

with the prosecutor stating what she believed had happened in the house. However, although prefaced with the statement "I believe," the comment was a fair inference from the evidence presented in the case, including the number of bullets fired and police testimony that there may have been up to six different guns used. Further, the trial court instructed the jury that the comments of counsel were not evidence and that it alone was the judge of the facts, *see* Trial Tr., dated 11/14/05, at 87, 89, and counsel declined as a matter of trial strategy to request a more specific curative instruction. "The fact that the prosecutor said 'I [believe]' does not cause the statement to be improper. . . . Just because a prosecutor has the habit of using phrases such as 'I think' or 'I believe', it does not mean that the argument, read as a whole, cannot be proper commentary on the evidence. While it may be a poor advocacy technique for counsel to ever use the word 'I' in argument, this in and of itself does not amount to improper argument." *Nelson v. Huibregtse*, No. 07-C-1022, 2009 WL 73149, at *9 (E.D. Wis. Jan. 6, 2009) (citing *United States v. Lindsay*, 157 F.3d 532, 536 (7th Cir. 1998)). In light of the merely borderline and isolated nature of the prosecutor's comment, the evidence against him, the court's general instructions to the jury, and petitioner's express decision to not have a further curative instruction, the Michigan Court of Appeals's conclusion that this comment did not amount to prejudicial misconduct is reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Jury Instructions (Claim IV)*

         Petitioner next contends that he was denied a fair trial by the trial court's failure to give two instructions relating to witness credibility. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

         1.      *Clearly Established Law*

         It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws"). Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court has noted, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Further, court conducted habeas review should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate "fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

    2.    *Analysis*

At the outset, petitioner's jury instruction claims are not cognizable on habeas review because counsel expressly agreed to the instructions as given, *see* Trial Tr., dated 11/14/05, at 86, 106, and never requested the instructions that petitioner contends should have been given. As the Sixth Circuit has repeatedly recognized, "[a] trial judge's failure to give an unrequested instruction is not an error cognizable in a federal habeas proceeding." *Miller v. Grant*, No. 93-2081, 1994 WL 102977, at *2 (6th Cir. Mar. 25, 1994) (citing *Manning v. Rose*, 507 F.2d 889, 895 (6th Cir. 1974)); *accord Bailey v. Smith*, No. 06-14099, 2008 WL 2607830, at *14 (E.D. Mich. June 30, 2008) (Hood, J., adopting

Report of Komives, M.J.).  Further, even if the claim is cognizable, it is without merit.

Petitioner contends that he was denied a fair trial by the trial court's failure to give the jury Instructions 5.7 and 4.5 of the Michigan Criminal Jury Instructions (2d).  CJI2d 5.7 instructs the jury that when a witness is a drug addict, the jury should consider the witness's testimony carefully, and should consider such factors as whether the witness's drug use affected her perception or memory, as well as whether the addiction gave the witness special reason to testify falsely, such as to shift blame and secure leniency.  *See* MICHIGAN CRIMINAL JURY INSTRUCTION (2D) 5.7.  However, petitioner cannot show that he was denied a fair trial by the absence of such an instruction.  The trial court gave a detailed instruction for evaluating the credibility of witnesses, *see* Trial Tr., dated 11/14/05, at 91-93, and defense counsel both questioned the witnesses extensively regarding their drug use and their immunity deals, and highlighted these facts during closing argument.  *See id.* at 63-64, 72-73, 75.  As the Supreme Court has explained in the context of direct review of a federal criminal conviction, "there is less need for a special jury instruction about the credibility of an addict-informant where the jury is aware that the witness is an addict and where there was substantial corroboration for the witness's testimony." *United States v. Combs*, 369 F.3d 925, 939 (6th Cir. 2004).  Here, the jury was aware of both the witnesses' drug use and their immunity deals, counsel argued that this testimony rendered their testimony unworthy of belief, and the trial court gave a detailed instruction on evaluating witness credibility.  In these circumstances, petitioner cannot show that he was denied a fair trial by the absence of a specific, unrequested instruction on addict testimony.  *See Gonzalez v. Berghuis*, No. 08-CV-13306, 2010 WL 3419825, at *1 (E.D. Mich. Aug. Aug. 27, 2010) (Friedman, J.); *Winburn v. Curtis*, No. 99-CV-72667, 2000 WL 33244272, at *14 (E.D. Mich. Jan. 31, 2000) (Hood, J.).  This is particularly so in light of the fact that no "clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), requires the giving of such an

24

instruction. *See Reese v. Lafler*, No. 07-CV-12087, 2009 WL 5217991, at *6 (E.D. Mich. Dec. 31, 2009) (Cleland, J.).

Likewise, petitioner is not entitled to habeas relief based on the trial court's failure to give an instruction on prior inconsistent statements. That instruction informs the jury that a prior inconsistent statement may only be used in assessing the witness's credibility, and may not be used as substantive evidence. *See* MICHIGAN CRIMINAL JURY INSTRUCTION (2D) 4.5. Here, however, petitioner presented no witnesses, and thus the only witnesses who were impeached were prosecution witnesses. And it could only inure to petitioner's benefit to have the witness's prior inconsistent statements treated as substantive evidence because that evidence, being contrary to the witness's trial testimony, would have weakened the prosecutor's substantive case. Thus, petitioner cannot show that he was denied a fair trial by the absence of this instruction. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 682 (E.D. Mich. 2003) (Hood, J.); *Millender v. Adams*, 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002) (Rosen, J.), *aff'd*, 376 F.3d 520 (6th Cir. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

H.      *Weight/Sufficiency of the Evidence (Claims VII)*

Petitioner next contends that the verdict was against the weight of the evidence, and that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Weight of the Evidence*

Petitioner contends that the trial court's verdict was against the great weight of the evidence. This claim also raises only a non-cognizable issue of state law. The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in *Jackson v. Virginia, infra*. Where the evidence is sufficient as a matter of due process, a claim that the verdict

was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. *See Douglas v. Hendricks*, 236 F. Supp. 2d 412, 435-36 (D.N.J. 2002); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002) (Friedman, J.); *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001); *cf. Tibbs v. Florida*, 457 U.S. 31, 44 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

2. *Sufficiency of the Evidence*

a. *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). However, under the amended version of § 2254(d)(1) a

federal habeas court must apply a more deferential standard of review of the state court decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case."  *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).  Michigan law provides that "[a]ny person who shall assault another with intent to commit the crime of murder, shall be guilty of a felony[.]" MICH. COMP. LAWS § 750.83.  Under this provision, "the crime of assault with intent to commit murder requires proof of three elements: '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.'" *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (quoting *People v. Plummer*, 229 Mich. App. 293, 581 N.W.2d 753, 759 (1998); *People v. Hoffman*, 225 Mich. App. 103, 570 N.W.2d 146, 150 (1997)).  As with other mental-state elements, intent to kill need not be proved by direct evidence, but rather may be proved by circumstantial evidence and reasonable inferences drawn from the evidence.  *See Warren*, 161 F.3d at 360; *Hoffman*, 225 Mich. App. at 111, 570 N.W.2d at 150.

*b.  Analysis*

Petitioner does not appear to dispute the evidence with respect to any specific element. Rather, he contends that there was insufficient evidence to show that he shot the victim at all and was

anything other than a surprised bystander.  Alford's testimony, however, if believed by the jury, clearly establishes that petitioner shot Alford several times.  *See O'Hara v. Brigano*, 499 F. 3d 492, 500 (6th Cir. 2007) (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Kenyon*, 397 F.3d 1071, 1076 (8th Cir. 2005) ("Even in the face of inconsistent evidence, a victim's testimony alone can be sufficient to support a guilty verdict.").  Further, petitioner's act of firing a gun at Alford multiple times and at close range is sufficient evidence from which the finder of fact could infer beyond a reasonable doubt that petitioner intended to kill the victim.  *See Johnigan v. Elo*, 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002) (Steeh, J.); *People v. Ritsema*, 105 Mich. App. 602, 609, 307 N.W.2d 380, 383 (1981);  *People v. Johnson*, 54 Mich. App. 303, 304, 220 N.W.2d 705, 706 (1974).

Petitioner's argument boils down to a claim that the evidence was insufficient because the evidence was contradictory, and Alford's testimony was not credible.  However, it is well-established that a reviewing court, whether on direct appeal or habeas review, "do[es] not make credibility determinations in evaluating the sufficiency of the evidence."  *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *Walker v. Russell*, 57 F.2d 472, 475-76 (6th Cir. 1995); *see also*, *United States v. Bailey*, 444 U.S. 394, 414-15 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").  "The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations."  *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at 326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996).  As noted above, the victim's testimony alone was sufficient, even if contradicted by other evidence.  *See*

28

*Kenyon*, 397 F.3d at 1076.  Further, the evidence is not rendered insufficient because there was no physical evidence tying petitioner to the crime.  "Lack of physical evidence does not render the evidence that is presented insufficient."  *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir.2005); *see also, O'Hara*, 499 F. 3d at 500 (victim's testimony alone sufficient even though not corroborated by other witnesses or physical evidence); *United States v. Bieghler*, 198 Fed. Appx. 566, 568 (8th Cir. 2006) ("'[F]orensic evidence' is not required for conviction.").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Ineffective Assistance (Claims III & V)*

        Finally, petitioner contends that he received ineffective assistance of both trial and appellate counsel.  The Court should conclude that petitioner is not entitled to habeas relief on this claims.

        1.      *Clearly Established Law*

        The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*  With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the

29

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*,

521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.      *Trial Counsel*

Petitioner contends that trial counsel was ineffective for failing to: (1) investigate the immunity agreement; (2) file a motion to quash the murder charges relating to the other victims, of which he was acquitted; (3) properly cross-examine the witnesses; (4) investigate and present an expert witness on the reliability of eyewitness identification; and (5) request the prior inconsistent statement and addict testimony jury instructions. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

*a. Immunity Agreement*

With respect to the immunity agreement, petitioner cannot show that he was prejudiced by counsel's failure to further investigate the agreement. As noted above, Alford told the jury that he understood that, under the agreement, he would not face any criminal charges relating to drug use or possession based on his testimony at the trial. Because neither the fact that Alford was on parole nor the possibility of a parole revocation was placed before the jury, the jury would have understood that Alford simply faced no criminal liability based on the events as to which he was testifying, and thus had a motive to testify favorable to the prosecution. For the same reason that the trial court's limitation did not significantly restrict petitioner's cross-examination and the applicability of the immunity agreement to parole revocation was not material under *Brady*, petitioner cannot show a

31

reasonable probability that the result of the proceeding would have been different had counsel further investigated the immunity agreement.

*b. Motion to Quash*

Petitioner next contends that his counsel was ineffective for failing to file a motion to quash the murder counts relating to the other victims. Petitioner cannot show that counsel was ineffective in failing to move to quash these counts because he cannot show a reasonable probability that these counts would have been quashed had such a motion be made. Under Michigan law, a charge will be bound over for trial to the circuit court if there is probable cause to believe a crime has been committed and the defendant committed the crime. *See* MICH. COMP. LAWS § 766.5. In making the probable cause determination, the district judge does not weigh the credibility of the witnesses. The judge may rely on circumstantial evidence and draw reasonable inferences from the evidence, and the probable cause determination is entitled to great deference. *See People v. Crippen*, 242 Mich. App. 278, 281-82, 617 N.W.2d 760, 763 (2000); *People v. Woods*, 200 Mich. App. 283, 287-88, 504 N.W.2d 24, 27 (1993). The prosecution's burden at the preliminary examination stage is not onerous. As the Michigan Court of Appeals has explained:

> A district court must bind over where the prosecutor has presented competent evidence sufficient to support probable cause to find both that a felony was committed and that defendant committed it. [*People v. Northey*, 231 Mich.App. 568], 574-575, 591 N.W.2d 227 [(1998)]. The prosecutor is not required to prove all elements of the offense charged at the preliminary hearing, but must only produce evidence sufficient for a finding of probable cause. "Probable cause to believe that the defendant committed the crime is established by a reasonable ground of suspicion, supported by circumstances sufficiently strong to warrant a cautious person in the belief that the accused is guilty of the offense charged." *People v. Woods*, 200 Mich. App. 283, 288, 504 N.W.2d 24 (1993). "Circumstantial evidence and reasonable inferences arising from the evidence may be sufficient to justify binding over a defendant." *Id.*

*People v. Cervi*, 270 Mich. App. 603, 616, 717 N.W.2d 356, 364 (Mich. Ct. App. 2006); *see also*, *People v. Grayer*, 235 Mich. App. 737, 744 n.3, 599 N.W.2d 527, 531 n.3 (Mich. Ct. App. 1999).

32

"Probable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v. Justice*, 454 Mich. 334, 344, 562 N.W.2d 652, 657 (1997).

Here, at the preliminary examination, Alford testified that "Al" shot him as Al was standing over the body of Caldwell, one of the murdered victims. He got up from the couch and ran at Al, at which time petitioner came out of the back bedroom and shot him. *See* Prelim. Exam. Tr., at 11-14. He further testified that after the initial shootings he heard Al and petitioner talking together about money, and that the two left the house together. *See id.* at 15-16. Both Harriet and Harris testified that petitioner and Al came to the house together, *see id.* at 35, 50-51, and ordered them to go into the back bedroom when their confrontation with Caldwell began, *see id.* at 38, 52. Harriet further testified that both Al and petitioner were arguing with Caldwell about "territory." *See id.* at 37, 38-39. And Harris further testified that she saw petitioner, not Al, shoot Caldwell, *see id.* at 52-53, and that petitioner and Al together searched the house for other occupants in order to shoot them, *see id.* at 54-55. Even assuming that only Al fired any of the fatal shots, the evidence that petitioner arrived and left with Al, argued with Caldwell over territory, searched the house for other witnesses, and fired at Alford when he charged at Al provided probable cause to believe that, at a minimum, petitioner aided and abetted Al in the murders, *see People v. Anderson*, 166 Mich. App. 455, 475-76, 421 N.W.2d 200, 210-11 (1988); *People v. Lester*, 78 Mich. App. 21, 29-30, 259 N.W.2d 370, 374 (1977), *rev'd on other grounds*, 406 Mich. 252, 277 N.W.2d 633 (1979), rendering him criminally responsible as if he was the shooter, *see People v. Robinson*, 475 Mich. 1, 6, 715 N.W.2d 44, 47 (2006); MICH. COMP. LAWS § 767.39. Because there is not a reasonable probability that a motion to quash would have been successful, petitioner cannot show that he was prejudiced by counsel's failure to file such a motion.

*c. Cross-Examination*

33

Petitioner next contends that counsel was ineffective for failing to properly cross-examine the prosecution's witnesses. Although petitioner lists this claim in the first paragraph of his Claim III in his motion for relief from judgment in the trial court, at no point in that brief, in his briefs to the Michigan Court of Appeals and Michigan Supreme Court, or in the briefs he has filed in this Court does petitioner identify any particular avenues of cross-examination counsel should have explored, or state explicitly how counsel's cross-examination was inadequate. "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002) (Friedman, J.); *see Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001); *Dows v. Wood*, 211 F.3d 480, 489 (9th Cir. 2000). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell*, 194 F. Supp. 2d at 1219; *accord Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002) (Rosen, J.). The mere fact that other avenues of impeachment may have existed does not render counsel ineffective. *See Poyner v. Iowa*, 990 F.2d 435, 438 (8th Cir. 1993); *see also*, *Waters v. Thomas*, 46 F.3d 1506, 1514 (11th Cir. 1995) (internal quotation omitted) (counsel not ineffective even though "other testimony might have been elicited from those who testified."); *United States v. Kozinski*, 16 F.3d 795, 817 (7th Cir. 1994) (counsel not ineffective where counsel could have elicited additional impeachment information on cross-examination).

Here, the record shows that counsel ably and thoroughly cross-examined the prosecution's witnesses. That some additional impeachment information may have been available to counsel does not support a finding that counsel's performance was deficient. *See Millender*, 187 F. Supp. 2d at 872; *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001) (Tarnow, J.). Defense counsel thoroughly cross-examined each of the prosecution witnesses, eliciting weaknesses in their version

34

of events and inconsistencies in their testimony.  The record shows that counsel's cross-examination was more than adequate to meet the Sixth Amendment standard for effective assistance of counsel. *See, e.g.*, *Sherron v. Norris*, 69 F.3d 285, 290 (8th Cir. 1995); *United States v. McKinney*, 954 F.2d 471, 481 (7th Cir. 1992); *Garcia v. Kuhlmann*, 897 F. Supp. 728, 730 (S.D.N.Y. 1995); *Wolfe v. United States*, 894 F. Supp. 1310, 1317 (D. Minn. 1995), *aff'd*, 92 F.3d 1190 (8th Cir. 1996).

Further, petitioner cannot establish prejudice.  Counsel thoroughly impeached Alford's testimony at trial, and the jury nevertheless credited his version of events.  The victim's "credibility was significantly impeached on cross-examination as it was, and the jury nevertheless chose to believe his testimony. It is therefore not reasonably probable that the result of the proceeding would have been different had counsel introduced this evidence."  Gonzales v. Warren, No. 03-CV-74266, 2005 WL 1348701, at *12 (E.D. Mich. Apr. 14, 2005) (Komives, M.J.), *report adopted*, No. 03-CV-74266 (E.D. Mich. May 25, 2005) (Roberts, J.); *cf. United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) (on *Brady* claim based on suppression of impeachment evidence, "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material.").  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Eyewitness Expert

Petitioner next contends that trial counsel was ineffective for failing to present expert testimony on the dangers of misidentification.  This claim is without merit, for several reasons.  First, counsel's decision to rely on extensive cross-examination attacking the identification and the basis for it was a reasonable tactical decision.  *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992); *Madrigal v. Bagley*, 276 F. Supp. 2d 744, 790 (N.D. Ohio 2003), *aff'd*, 413 F.3d 548 (6th Cir. 2005);

35

*Dorch v. Smith*, No. 01-CV-71206, 2002 WL 32598987, at *18 (E.D. Mich. Sept. 11, 2002) (Tarnow, J.). *See generally*, *Perkins v. McKee*, 411 Fed. Appx. 822, 833 (6th Cir. 2011) ("No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment. And there is nothing about this case suggesting that such a witness was imperative here.").

Second, petitioner has presented no evidence, through affidavit or otherwise, that any eyewitness identification expert was available who could have offered testimony at trial. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim, *see United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008).

Third, petitioner cannot show that he was prejudiced by counsel's failure to call an identification expert, for several reasons. Counsel extensively cross-examined the witnesses regarding the bases of their identifications, and this cross-examination provided petitioner "ample opportunity to show he was a victim of misidentification." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1128 (10th Cir. 2006); *see also*, *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir. 1986). As the Sixth Circuit has explained, "the hazards of eyewitness identification are within the ordinary knowledge of most lay jurors." *United States v. Langan*, 263 F.3d 613, 623 (6th Cir. 2001). In light of counsel's

cross-examination of the witnesses, there is not a reasonable probability that the result of the proceeding would have been different had an expert testified.

Further, petitioner cannot establish prejudice because there is not a reasonable probability that such evidence would even have been admissible. Although there is no *per se* rule excluding expert testimony on the dangers of eyewitness misidentification, the Michigan courts generally permit such testimony only where the expert ties the general principles regarding misidentification to the particular eyewitness identifications involved in the case. *See People v. Kean*, No. 292312, 2011 WL 6004070, at *2-*3 (Mich. Ct. App. Dec. 1, 2011) (discussing *United States v. Brownlee*, 454 F.3d 131, 141 & n.7 (3d Cir. 2006)); *People v. Cervantes*, No. 299491, 2011 WL 5008611, at *2 (Mich. Ct. App. Oct. 20, 2011). Here, petitioner has pointed to no actual expert who could have testified on his behalf, or how such an expert could have related the general factors which cause witnesses to give a mistaken identification to the particular witness identifications in his case. As noted above, it is petitioner's burden to do so. *See Pierce*, 63 F.3d at 833; *Lewis*, 11 F.3d at 1352.

Finally, an eyewitness identification expert would have done nothing to challenge the testimony of Alford, the principal witness in the case who gave the most damaging testimony identifying petitioner as the shooter, at least with respect to the charge on which petitioner was actually convicted. Alford testified at both the preliminary examination and at trial that petitioner was his brother's friend, and he had known petitioner since he was a child. *See* Prelim. Exam. Tr., at 13; Trial Tr., dated 11/10/05, at 93. "The[] dangers [of misidentification] are generally limited to eyewitness identifications of strangers or persons with whom the eyewitness is not very familiar. Although there may be exceptions, for obvious reasons, the identification of a person who is well known to the eyewitness does not give rise to the same risk of misidentification as the identification of a person who is not well known to the eyewitness." *State v. Outing*, 3 A.3d 1, 42 n.8 (Conn. 2010)

37

(Palmer, J., concurring); *see also*, *Jones v. South Carolina*, No. 8:08-cv-1958, 2008 WL 5431161, at *7 (D.S.C. Dec. 31, 2008); *Heath v. United States*, 26 A.3d 266, 282 & n.53 (D.C. 2011). Because Alford was familiar with petitioner, expert testimony on the dangers of stranger identification testimony would have done nothing to impeach his identification of petitioner as the shooter. In light of these factors, petitioner cannot show that he was prejudiced by counsel's failure to present expert testimony on the dangers of eyewitness identification testimony. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### e. Jury Instructions

Finally, petitioner contends that counsel was ineffective for failing to request the jury instructions regarding prior inconsistent statements and addict testimony. The Court should reject this claim. "Failure to request additional instructions is not ineffective assistance when the evidence, the general instructions given, and counsel's closing argument . . . put the issue squarely before the jury." *Millender v. Adams*, 187 F. Supp. 2d 852, 874 (E.D. Mich. 2002) (Rosen, J.), *aff'd*, 376 F.3d 520, 526 (6th Cir. 2004). As explained in connection with petitioner's underlying jury instruction claims, the trial court's general credibility instruction, along with counsel's cross-examination of the witnesses and his closing argument, squarely put the credibility, including drug use, issues before the jury. Further, because only the prosecutor presented witnesses, any failure to instruct they jury that their prior statements could not be used as substantive evidence could only have inured to petitioner's benefit. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### f. Prosecutorial Misconduct

It is not clear whether petitioner also contends that counsel was ineffective for failing to object to the allegedly improper prosecutorial comments at his trial. To the extent he is doing so, his claim

is without merit.   As noted above, the prosecutor's comments did not amount to prosecutorial misconduct, and thus petitioner cannot show that any objection to the comments would have been successful.  It follows, therefore, that petitioner cannot show that counsel was deficient, *see Bradley v. Birkett*, 192 Fed. Appx. 468, 475 (6th Cir. 2006) (counsel not ineffective for failing to raise meritless objection); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (same); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same), or that he was prejudiced by counsel's failure to object, *see Keller v. Larkins*, 251 F.3d 408, 419 (3d Cir. 2001).  Likewise, petitioner cannot show that counsel performed deficiently in failing to seek a curative instruction with respect to the prosecutor's comment that she thought that Caldwell's gun had been used.  As counsel indicated on the record, he made a tactical decision to decline such an instruction to avoid highlighting the matter for the jury. This was a reasonable tactical decision.  *See Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) ("A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."); *United States v. Sampson*, 820 F. Supp. 2d 202, 230 (D. Mass. 2011).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.    *Appellate Counsel*

Petitioner also contends that appellate counsel was ineffective for failing to raise each of his motion for relief from judgment claims on direct appeal.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

In evaluating the performance of appellate counsel, it is well established that "appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a

39

*Strickland* claim based on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was incompetent." *Id.* As a general rule, it is "'only when ignored issues are clearly stronger than those presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Further, in the appellate counsel context, to demonstrate prejudice petitioner must show a reasonable probability that his claims would have succeeded on appeal. *See id.* at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir. 2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

Here, counsel raised two significant issues on direct appeal. Petitioner has not shown that the claims he presents here are clearly stronger that the claims raised by counsel on direct appeal. Further, as explained above, petitioner has failed to show that any of his claims have merit, and thus he cannot establish a reasonable probability that his claims would have succeeded on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his appellate counsel claim.

J.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*,

40

529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

     2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, the jury would have understood Alford as having complete immunity regarding any criminal charges, and further information as to whether this extended to immunity from a parole revocation could have only harmed petitioner, if the agreement did not cover parole revocation.  Thus, it is not reasonably debatable that the trial court's limitation on cross-examination did not violate petitioner's right to confront Alford, nor that the complete immunity agreement was not material under *Brady*. With respect to petitioner's prosecutorial misconduct claims, for the reasons explained above it is not reasonably debatable that the prosecutor's comments were proper ones based on the evidence in the case and fair inferences drawn therefrom.  It is further not reasonably debatable that the trial court's failure to give instructions on prior inconsistent statements and addict testimony did not deprive petitioner of a fair trial, in light of the court's general instructions on witness credibility and that the use of inconsistent statements as substantive evidence could only have helped, not hurt, petitioner's case.  With respect to petitioner's weight and sufficiency claims, because it is clear that a weight of the evidence claim is not cognizable on habeas review and that a victim's testimony alone can constitute sufficient evidence to prove a defendant's guilt beyond a reasonable doubt, the resolution of these claims is not reasonably debatable.  Finally, because (a) petitioner suffered no prejudice with respect to the immunity agreement issue, (b) there was sufficient evidence to provide probable cause to bind over petitioner on charges of aiding and abetting murder, (c) counsel engaged in extensive and effective cross-examination of the prosecution's witnesses, (d) expert eyewitness identification testimony would likely have been inadmissible and in any event would not have challenged Alford's testimony, (e) petitioner was not prejudiced by the absence of the jury instructions, and (f) petitioner's underlying prosecutorial misconduct and motion for relief from judgment claims are without merit,

the resolution of petitioner's ineffective assistance claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

K.     *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 5/21/12

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record and   by
electronic means or U.S. Mail on May 21, 2012.

s/Eddrey Butts
Case Manager

44