UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BERNARD JONES,

    Petitioner,

                                         Case Number 10-11783
v.                                           Honorable Thomas Ludington

DAVID BERGH,

    Respondent.
_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING JUDGE KOMIVES' REPORT AND RECOMMENDATION, DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS, AND DENYING OTHER MOTIONS AS MOOT**

Petitioner Bernard Jones, a state prisoner currently confined at the Thumb Correctional facility, filed a petition for writ of habeas corpus on May 1, 2010. ECF No. 1. He was convicted on November 15, 2005, of assault with intent to commit murder, Mich. Comp. Laws § 750.83; possession of a firearm by a convicted felon, Mich. Comp. Laws § 750.224f; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court. On December 6, 2005, he was sentenced to a term of 20-40 years' imprisonment on the assault conviction, 2-5 years' imprisonment on the felon in possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

Petitioner appealed as of right to the Michigan Court of Appeals contending, through counsel, that he was entitled to a new trial where the trial court abused its discretion in denying the defense's request to inquire into a witness's understanding of an immunity agreement, thus denying Petitioner his right to due process, and that he was entitled to a new trial where the prosecutor's

closing arguments denied him a fair trial. The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Jones*, No. 267111, 2007 WL 1264001 (Mich. Ct. App. May 1, 2007) (per curiam).

Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Jones*, 480 Mich. 953, 741 N.W.2d 328 (2007). Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to Mich. Ct. R. 6.502, raising the following claims: (1) he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution and that "cause" regarding counsel's ineffectiveness would be demonstrated for review; (2) his right to a properly instructed jury had been infringed upon by the lack of proper instructions that should have been read because there was clear evidence presented at trial to support the instructions raised regarding the issue and that the judge had discretion to read the instruction even absent a request from a moving party and, alternatively, counsel was ineffective for failing to request that the included jury instructions be read to the jury; (3) he was denied his right to effective assistance of counsel because counsel failed to request jury instructions, to move for eyewitness expert testimony, to file proper motions and to place proper objections in the record; (4) he was denied the right to a fair trial by the judge disallowing impeachment of Christopher James Alford who had prior convictions, that he was not allowed to question Alford's understanding of his immunity agreement, and that the prosecution committed a *Brady* violation by not disclosing the immunity agreement as impeachment material; and (5) the jury verdict convicting him of the above-referenced crimes was against the great weight of the evidence.

On August 4, 2008, the trial court denied petitioner's motion for relief from judgment,

concluding that petitioner's claims were barred either under Mich. Ct. R. 6.508(D)(2) because they had already been raised and decided on direct appeal, or under Mich. Ct. R. 6.508(D)(3) because petitioner failed to raise them on direct appeal. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Jones*, 485 Mich. 1079, 777 N.W.2d 165 (2010); *People v. Jones*, No. 289874 (Mich. Ct. App. July 16, 2009).

   Petitioner, proceeding pro se, then filed the instant application for a writ of habeas corpus. As grounds for the writ of habeas corpus, he raises the following claims: (1) he is entitled to a new trial where the Michigan State Courts violated his right to due process when his request to inquire into a witness' understanding of an immunity agreement was denied; (2) he is entitled to a new trial where the closing arguments of the prosecutor denied him a fair trial; (3) he was denied effective assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution and that "cause" regarding counsel's ineffectiveness would be demonstrated for review; (4) his right to a properly instructed jury had been infringed upon by the lack of proper instructions that should have been read because there was clear evidence presented at trial to support the instructions raised regarding the issue and that the judge had discretion to read the instruction even absent a request from a moving party and, alternatively, counsel was ineffective for failing to request that the included jury instructions be read to the jury; (5) he was denied his right to effective assistance of counsel because counsel failed to request jury instructions, to move for eyewitness expert testimony, to file proper motions and to place proper objections in the record; (6) he was denied the right to a fair trial by the judge disallowing impeachment of Christopher James Alford who had prior

convictions, that he was not allowed to question Alford's understanding of his immunity agreement, and that the prosecution committed a *Brady* violation by not disclosing the immunity agreement as impeachment material; and (7) the jury verdict convicting him of the above-referenced crimes was against the great weight of the evidence.

Respondent filed an answer on November 5, 2010. Respondent contends that petitioner's fourth through seventh claims are barred by petitioner's procedural default in the state courts, and that petitioner's remaining claims are without merit. Petitioner filed a reply to respondent's answer on March 28, 2011. Petitioner also filed an additional exhibit, consisting of parole board documents of witness Christopher Alford.

On May 21, 2012, Magistrate Judge Paul Komives issued a report and recommendation, recommending that Petitioner's application for a writ of habeas corpus be denied. Petitioner filed objections to Judge Komives' report and recommendation on July 16, 2012.[1] ECF No. 22.

The Court agrees with Judge Komives' conclusions and will adopt his report and recommendation. As will be explained herein, Petitioner's objections will be overruled and his petition for writ of habeas corpus will be denied.

**I**

The underlying facts as set forth in Petitioner's brief, and outlined in Judge Komives' report and recommendation, are as follows:

> The following witnesses testified: Dawn Harriett, Barbara Harris, Detroit Police Officer Michael Hostos, Doctor John Somerset, Christopher Alford, Detroit Police Officer David Pauch, Detroit Police Officer Errol King, and Detroit Police Sergeant Ernest Wilson.

---

[1]Petitioner's objections were docketed a second time on the same day. ECF No. 25.

. . . .

Ms. Harriett was present at the location, Mr. Roger Snyder's house, along with Charles Caldwell, Christopher Alford, Brian Alford, Barbara Harris, and someone else whom she did not know. She was there using cocaine. A person she knew as "Al" and defendant came over. When she walked out of the bedroom, she saw both of them talking to Charles, whom she saw sitting at a table cutting up some drugs. She thought they were arguing over drugs. She went back into the bedroom and heard gunfire. She saw Al shoot Mr. Snyder, who was in the bedroom with her and then shoot her. She did not see what happened to Christopher that evening, except to earlier seeing him sleeping on the couch in the living room. She never saw defendant with a weapon, nor did she know what happened to defendant after she went back into the bedroom. She was aware someone taking drugs out of the house after the shooting. She was also aware there were probably weapons in the drug house. She thought she heard different guns, but did not know who had the other weapon, nor did she Christopher Alford get shot.

Ms. Harris shared the house with Mr. Snyder. Several others were there. Al and defendant, whom she had known as a supplier of narcotics, came over and she let them in. They got into an argument with Charles who was seated at a table in the living room. Defendant told her to go into the back room. She admitted using narcotics that evening. She was looking into the living room when she saw defendant pull out a gun and shoot Mr. Caldwell three times. She knew Mr. Caldwell had a weapon for protection. She did not see Al with a weapon. She hid in a bathroom closet. She did not see who shot Mr. Snyder, but claimed defendant shot Ms. Harriett, but was not sure. She did not see Mr. Alford get shot. After they left, she came out, saw Mr. Alford had been shot, and tried calling 911. Mr. Alford told her to clean up the drugs from the table and get rid of them. She did so by putting them down her pants. They went outside, were able to flag down a border patrol officer who was driving by. She was later interviewed by the police, but did not tell them about the narcotics because she did not want to get anyone into trouble. She did however, tell Sgt. Wilson, because she knew she was going to be patted down. She admitted she was given immunity concerning any narcotics charges. She did not see the two leave, testified differently at the preliminary examination, and admitted she had been previously convicted of several offenses.

As Off. Hostos was responding to the location, he met the border patrol agent, who had Mr. Alford as well as a female, Ms. Harris. At the location, he found one male lying on the living room floor, dead, and two others, male and female, in a rear bedroom. The male appeared dead but Ms. Harriett was alive. He was present when EMS arrived. He found residual narcotics, but no weapons in the house. He briefly interviewed Ms. Harris before he turned her over to his sergeant. There were other officers at the scene.

Dr. Somerset, forensic pathologist, determined the cause of death as to Mr. Caldwell was four gunshot wounds with evidence of close range firing. A bullet was recovered. As to Mr. Snyder, the cause of death was two gunshot wounds to the head, also with evidence of close range firing. A bullet was also recovered and turned over to the police.

Mr. Alford was present at the location, sleeping on a couch in the living room. He had known Mr. Caldwell since they were children. He did not see Ms. Harris there, that Ms. Harriett was there that day. He knew someone by the name of Al, knew defendant since they were children. He never had any problems with either of them. He awoke when he was shot in the face. He saw Al standing over Mr. Caldwell. When Al pointed the gun at him, he started wrestling with him. He did not see defendant. He did not know who was shooting him in the neck. As he was wrestling with Al he got shot a couple more times, then saw defendant come out from the back and shoot him in the back. He fell on the ground and played dead. He heard several more shots. He believed defendant shot him a total of four times out of the eight or nine that struck him. He heard defendant tell Al to give him some more. He believed that the weapons were handguns. He did not see anyone else in the house. He believed the two left together. Approximately 30 seconds later, he checked on Mr. Caldwell, who he believed was dead. Ms. Harris came out from the back room. Even though he had been shot in the face, he told Ms. Harris to clean up the narcotics from the table in the living room. He did not see any weapons in the house. He went into the back bedroom, saw the two people lying on the bed and left the house. He was able to flag down the border patrol officer. He was taken to the hospital, where he stayed for a week. He admitted it was a drug house, but he did not use any narcotics that day. He admitted he had sold drugs from the house, but denied there were any guns in the house or that he saw Mr. Caldwell with a weapon.

He believed he had an immunity agreement with the prosecution in return for his testimony, that he would not have any charges brought against him involving narcotics. The only time he saw the narcotics was after he was shot. He did not see anyone arrive at the house. He was interviewed by the police. He testified at the preliminary examination differently than his current testimony. He admitted there was another person in the house, whom he thought was selling drugs, but did not see him when he woke up.

Outside the presence of the jury, it was established that Ms. Harris was given immunity and Mr. Alford was also offered immunity regarding any drugs found at the location. The court denied a defense request to explore the witness' full understanding of the immunity agreement or to make a separate record. Mr. Alford admitted to a prior drug conviction and felony firearm conviction, for which he was on parole.

Off. Pauch, expert in firearms and tool marks identification, examined shell

>casings and bullets recovered, determined there were possibly six weapons involved. The bullets recovered from the victims came from the same weapon.
>
>Off. King, evidence technician, identified various photographs of the location, which included locations of various items of evidence.
>
>It was stipulated defendant had previously been convicted of a felony and was ineligible to possess a weapon.
>
>Sgt. Wilson, officer-in-charge, had taken a statement from defendant on April 9, 2005, after advising him of his Miranda rights. The statement was read to the jury.
>
>Outside the presence of the jury, defendant confirmed he would not be testifying. Defendant rested.

Def.-Appellant's Br. on App., in People v. Jones, No. 267111 (Mich. Ct. App.), at 2-6 (citations to trial transcript and footnotes omitted).

## II

Petitioner has made seven objections to the magistrate judge's report and recommendation. Each will be discussed below.

### A

Petitioner's first, second, third, and fourth objections are to Judge Komives' conclusion that Petitioner cannot show a *Brady* violation by demonstrating the prosecutor's failure to disclose the immunity agreement, because that agreement was disclosed. Judge Komives reasoned that, even if defense counsel first learned of Alford's immunity agreement at trial, there would be no failure to disclose the agreement under *Brady*. "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (*citing United States v. Patrick*, 965 F.2d 1390, 1400 (1992)). Even where "previously undisclosed evidence is disclosed . . . during trial, no *Brady* violation occurs unless the defendant has been prejudiced by the delay in disclosure." *Norris v. Schotten*, 146 F.3d 314, 334 (6th

Cir. 1998) (internal quotation omitted); *accord Davis*, 306 F.3d at 421 ("Delay violates Brady only where the delay causes prejudice."); *United States v. Bencs*, 28 F.3d 555, 560-61 (6th Cir. 1994).

Petitioner also argues that the immunity agreement did not disclose that Alford's immunity extended to any parole violation arising from Alford's presence in the house where drugs were being sold. Because Petitioner did not demonstrate that Alford had, in fact, been granted immunity with respect to any parole violation, Judge Komives concluded that he cannot establish a *Giglio* violation and, alternatively, Petitioner has not demonstrated that the alleged additional immunity agreement was material in order to establish a violation of his rights under *Brady*. *See Giglio v. United States*, 405 U.S. 150, 153-54 (1972) (noting that a violation of a defendant's right to a fair trial occurs where the prosecution fails to disclose evidence favorable to an accused and the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987) (concluding that under Brady, evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different).

Petitioner argues that Judge Komives' conclusions ignore that *Brady* requires disclosure of impeachment evidence if it would affect a witness' credibility. Petitioner offers a number of cases to support his contention that it is error to deny his writ without making a factual finding regarding the alleged immunity agreement to determine whether it was material under *Brady*. In the cases advanced by Petitioner, however, the prosecution either failed to disclose that any agreement had been reached between law enforcement and the witness, or evidence of the agreement would have provided powerful and unique impeachment testimony demonstrating that the witness had an interest in fabricating his testimony.

In the instant case, defense counsel was able to use the immunity agreement to impeach Alford, and the nature of Alford's testimony suggested that he believed he was immune from any criminal charges arising from Alford's presence in the house where drugs were being sold. As Judge Komives' noted, Alford was questioned about this immunity agreement and his drug use, and extensively impeached in a number of respects. In light of this significant impeachment evidence and the fact that the jury would naturally have understood that Alford faced no criminal liability in exchange for his testimony, it is not reasonably probable that the existence of an actual agreement with respect to parole violations, if one in fact existed, would have altered the jury's assessment of Alford's credibility. *See United States v. Avellino*, 136 F.3d 249, 257 (2d Cir.1998) ("[W]here the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable or who is subject to extensive attack by reason of other evidence, the undisclosed evidence may be cumulative, and hence not material." The conclusions in the case law Petitioner offers does not change this analysis. Petitioner's objections on this issue will be overruled.

**B**

Petitioner's fifth objection is to Judge Komives' conclusion that the prosecution did not violate Petitioner's due process rights based on her "I believe" comments coupled with her alleged vouching for witnesses. The state appellate court concluded that these statements did not constitute a due process violation, reasoning that with each statement the prosecutor was not expressing a personal belief, but was expressing her arguments about the evidence. The court also reasoned that the trial court could have cured any possible prejudice by giving a cautionary instruction, but that Petitioner expressly declined the opportunity to seek any curative instruction after concluding that

it would be best not to highlight the information with a curative instruction. Judge Komives concluded that this determination was reasonable.

As Petitioner notes, in relevant part, for non-flagrant improper conduct, the Sixth Circuit applies the three-part *Bess* test to determine whether prosecutorial misconduct warrants reversal. *United States v. Bess*, 593 F.2d 749, 753-57 (6th Cir.1979). Under the *Bess* test, a conviction is reversed for prosecutorial misconduct only if "(1) proof of defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury." *United States v. Carroll*, 26 F.3d 1380, 1385-86 (6th Cir.1994). Regardless of whether proof of Petitioner's guilt is overwhelming or whether the trial court failed to cure the error with an admonishment to the jury, Petitioner did not object to the prosecutor's comments at trial and specifically reasoned that a curative instruction could be less favorable to the defense in that situation. Petitioner thus has not met the three-part *Bess* test to establish that his conviction should be reserved due to prosecutorial misconduct and his objection will be overruled.

**C**

Petitioner's sixth objection is to Judge Komives' conclusion that Alford's testimony, even if contradicted by other evidence, was sufficient evidence to establish that Petitioner shot Alford several times. Petitioner argues that the cases Judge Komives advances are factually distinguishable because there was direct evidence from the victim and circumstantial evidence from another witness to corroborate the victim's version of the events. Petitioner notes that here, there is no corroborating testimony from another witness and the evidence offered by Alford is questionable because he was shot in the back and thus could not have witnessed Petitioner shoot him. Petitioner re-states his additional argument that he should have been able to utilize the alleged parole violation immunity

-10-

to impeach Alford so the jury could properly assess his credibility. As previously noted, Petitioner's objections regarding his inability to use the alleged parole violation immunity have been overruled because he has not demonstrated that this evidence was material. Although the facts of the cases are distinguishable, the legal conclusions in the cases Judge Komives relied upon establish that the Court, when conducting a habeas review, cannot make credibility determinations in evaluating the sufficiency of the evidence and the lack of physical evidence does not render the evidence that is presented insufficient. *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000); *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005); *Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995)("The fact that the testimony is contradictory does not mean that evidence is insufficient, only that the jury must make credibility determinations."); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (noting that it is the job of the jury, not a court sitting on habeas review, to resolve conflicts in the evidence, and the court must presume that the jury resolved those conflicts in favor of the prosecution). Judge Komives' conclusions are sound, and Petitioner's objection will be overruled.

### D

Petitioner's final objection is to Judge Komives' recommendation to deny a certificate of appealability. Petitioner enumerates his general disagreement with Judge Komives' conclusions that reasonable jurists would not find the district court's assessment of the constitutional claim debatable or wrong. An objection that does nothing more than state a disagreement with a magistrate's suggested resolution is not an "objection" as that term is used in the context of Federal Rule of Civil Procedure 72. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Accordingly, Petitioner's objection will be overruled.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); *Fed. R. App. P.* 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id*. At 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case.

### III

Accordingly, it is **ORDERED** that Petitioner's objections (ECF Nos. 22, 25) are **OVERRULED**.

It is further **ORDERED** that Judge Komives' report and recommendation (ECF No. 19) is **ADOPTED**.

It is further **ORDERED** that Petitioner's petition for writ of habeas corpus (ECF No. 1) is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith and leave to proceed in forma pauperis on appeal is **DENIED**.

It is further **ORDERED** that Petitioner's motion for an evidentiary hearing (ECF No. 23) is **DENIED AS MOOT**.

It is further **ORDERED** that Petitioner's motions for documents (ECF Nos. 26, 27) are **DENIED AS MOOT**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 7, 2012

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Bernard Jones, #292243, Thumb Correctional Facility, 3225 John Conley Drive, Lapeer, MI 48446 by first class U.S. mail on September 7, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS